**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. <u>22-20557-CR-BLOOM</u>**

**UNITED STATES OF AMERICA**

**vs.**

**JAVIER HERNANDEZ and**
**RAMON REYES ARANDA,**

      **Defendants.**

_____/

<u>**UNITED STATES OF AMERICA'S OPPOSED MOTION *IN LIMINE* TO ADMIT**</u>
<u>**STATEMENTS BETWEEN COCONSPIRATORS**</u>

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this motion *in limine* seeking to admit statements between Mario Alberto Enrique Lopez, an uncharged coconspirator, and Jose Miguel Gonzalez Vidal, a defendant charged in related case 21-CR-20050-CMA, as statements made in furtherance of the conspiracy under Fed. R. Evid. 801(d)(2)(E).

## I.    <u>FACTUAL BACKGROUND</u>

### A.  General Background

Between December 2017 and September 2022, codefendant Javier Hernandez actively participated in a criminal organization that smuggled Cuban migrants first to Mexico and then into the United States by boat. D.E. 51 ¶ 2.  After arriving in Mexico, other members of this criminal organization, which include Jose Miguel Gonzalez Vidal and unindicted coconspirator Mario Alberto Enrique Lopez, would forcibly detain the migrants while awaiting extortionate payments for the smuggling services from the migrants' families. *See United States v. Vidal et al.* Case No. 1:21-cr-20050-CMA, D.E. 467 at 3 ("*Vidal*").  The organization's criminal scheme required using

of stolen vessels (1) to transport the migrants and (2) to bribe Mexican officials to permit the organization to conduct its activities undetected. *Id.* For instance, the organization would strip the stolen vessels of identifying characteristics, purchase falsified identification documents in an attempt to legitimize the stolen vessels, and then sell these stolen vessels using fraudulent titles. *Id.*

Both defendants played crucial roles in this scheme. *United States v. Hernandez*, Case No. 1:22-cr-20557-BB, D.E. 51 ("*Hernandez*"). As relevant here, defendant Reyes Aranda scouted potential target boats and told Hernandez the target boat's location and other important information necessary to acquire the boats without detection. *See, e.g., id.* ¶ 26. Defendant Hernandez would then steal the boat and sail it from Florida to Mexico. *Id.* ¶ 2. The defendants would also obtain counterfeit documentation for the vessels and boat parts. *Id.* ¶ 4. Hernandez would transport the vessels to a marina in Mexico, owned by Enrique Lopez, for use by other members of the organization. *Id.* ¶ 2.

Defendants Hernandez and Reyes Aranda were paid by the organization for stealing the boats and sailing them to Mexico. For their actions, the defendants are charged in a superseding indictment with conspiracy to encourage aliens to enter the United States for financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I) (Count 1); conspiracy to transport stolen vessels, in violation of Title 18, United States Code, Section 371 (Count 2); conspiracy to traffic in certain motor vehicles with tampered or altered identification numbers, in violation of Title 18, United States Code, Section 371 (Count 3); trafficking in certain motor vehicles, in violation of Title 18, United States Code, Section 2321 (Count 4); and money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h) (Count 5).

*Id.*[1] The conspiracies charged in Counts 2 and 5 began in and around December 2017 through on or about September 30, 2022.

### B. November 2019 Theft and Transportation of "Luca Brasi"

Consider an example of the defendants' scheme. On November 20, 2019, Hernandez transported a stolen 2007 28' Southport center console vessel, a/k/a "Luca Brasi" from Naples to Mexico. Text message conversations between Hernandez and Reyes Aranda demonstrate that Reyes Aranda identified the *Luca Brasi*, enabling Hernandez to transport it from Florida to Mexico without the owner's permission or authority. On October 25, 2019, approximately one month before the theft, Reyes sent Hernandez several photographs of the *Luca Brasi*, which appear to have been taken under the cover of darkness, suggesting Reyes' intent to conceal his activities. The defendants also discussed procuring an engine key for the model of the engines installed in the Luca Brasi. Law enforcement recovered photographs of this same vessel on Hernandez's cellphone.

On November 21, 2019, Mexican law enforcement arrested Hernandez, who admitted to traveling to Mexico aboard a green vessel[2] that he had later given to Enrique Lopez at Lopez's marina. That evening, Mexican law enforcement surveilled Enrique Lopez's marina and observed a blue truck with a trailer carrying a green vessel leaving the dock. When Mexican law enforcement stopped the truck, Enrique Lopez was the truck's driver and sole occupant. Law enforcement asked him to provide documentation establishing his ownership of the green vessel and he was unable to do so. Notably, the vessel had already been altered in several ways, including: (1) the green color had been stripped for repainting; (2) despite the paint stripping, a faint outline

---

[1] Defendant Reyes Aranda is only charged in Counts 2 and 5 of the superseding indictment.
[2] The *Luca Brasi* was a green vessel.

of the word "Southport" was visible; and (3) the engine serial number sticker had been removed. These alterations are consistent with the organization's attempts to conceal the stolen vessels that were used to smuggle migrants. Mexican law enforcement's observations of Enrique Lopez and recovery of the stolen vessel from his marina will establish that Enrique Lopez, although uncharged, was certainly a member of the conspiracy.

### C.  Statements between Gonzalez Vidal and Enrique Lopez

Evidence obtained as part of the investigation shows that Gonzalez Vidal worked with Enrique Lopez, Hernandez, and Reyes Aranda to coordinate the boat theft scheme. In fact, Enrique Lopez and Gonzalez Vidal were responsible for coordinating the payments to Hernandez and Reyes Aranda for the vessel thefts.

Law enforcement seized cellphones from Gonzalez Vidal when he was arrested. One of these phones contained messages from Enrique Lopez wherein the two discussed how they would pay Hernandez and Reyes Aranda. In one message, Enrique Lopez wrote, "2300 for Javi [HERNANDEZ] and 700 for ramoncito [REYES] junior will give 5500 of the freight."  Enrique Lopez's directions to Gonzalez Vidal regarding payment for Hernandez and Reyes Aranda is powerful evidence that they worked in concert.

### D.  Theft of Cobia Vessel

On or about November 18, 2022, Reyes Aranda was arrested, and law enforcement seized his cellphone. Law enforcement discovered additional evidence on Reyes Aranda's phone indicating his participation in the theft of a Cobia vessel. Specifically, in July 2022, Reyes Aranda and Enrique Lopez discussed the theft and exportation of the Cobia. The conversation began with Reyes Aranda sending Enrique Lopez several photographs of the vessel. Enrique Lopez confirmed

that he found a buyer for the vessel, and the two began orchestrating the exportation of the vessel through Linea Peninsular, a shipper based in Panama City, Florida.

On August 9, 2022, Enrique Lopez sent Reyes Aranda a screenshot of a quote he received from Linea Peninsular for the Cobia vessel and trailer.  In response, Reyes Aranda sent Enrique Lopez a photo of the Florida Registration for the trailer, which was in Reyes Aranda's name. Reyes Aranda also sent Enrique Lopez a photo of the Florida Registration and Certificate of Title for the Cobia, which was in another individuals' name.

On August 10, 2022, Enrique Lopez sent Reyes Aranda a screenshot of an email from Linea Peninsular, in Spanish, which explained to Enrique Lopez that the shipping would require a Bill of Sale indicating the serial numbers for the Cobia's Yamaha engines and the vehicle identification number ("VIN") for the trailer.   The email further explained that all of the requested information was required for shipment, and that the Bill of Sale had to identify the name of the U.S.-based party shipping the vessel and trailer.  Enrique Lopez also explained, "we must make a bill of sale."  Reyes Aranda then sent Enrique Lopez more photos of the vessel, this time including the serial numbers for the two Yamaha engines the vessel was equipped with.

Evidence obtained from Reyes Aranda's phone shows that Enrique Lopez put him in touch with another individual who instructed Reyes Aranda on how to create the fraudulent documents needed to satisfy Linea's shipping requirements. In late August 2022, Reyes Aranda exchanged several messages with this individual that included copies of the fraudulent bill of sale, which Reyes Aranda later sent back to Enrique Lopez. Enrique Lopez then forwarded Reyes Aranda messages from a Mexican-based buyer confirming the purchase of the Cobia vessel. Enrique Lopez coordinated payments to Reyes Aranda. The evidence shows that Reyes Aranda received

three different transfers on or about September 20, 2022 in connection with the theft and subsequent sale of the Cobia.

Law enforcement contacted the Cobia's owner, who reviewed photographs of the vessel, and confirmed that it was his and had been stolen. Law enforcement also confirmed that the documentation relating to the Yamaha engines was fraudulent because the real Yamaha engines corresponding to those serial numbers belong to two unrelated people who were unaware of the scheme.

### E.  Statements by Enrique Lopez Regarding Cobia Vessel

As part of its investigation into the Cobia theft, law enforcement received records from Linea Peninsular, which included several emails from Enrique Lopez coordinating the vessel's exportation. For example, on August 9, 2022, Enrique Lopez wrote to a representative of Linea Peninsular providing a description of the vessel to be shipped—a 2020 Cobia vessel—and attached the shipping documents for the vessel and trailer. These are the same shipping documents Enrique Lopez discussed with Reyes Aranda. On September 17, 2022, Enrique Lopez sent a follow up email to a Linea representative asking whether the vessel had arrived in Progreso, Mexico and providing the corresponding order number for the Cobia shipment. These emails confirm that Enrique Lopez used the fraudulent documentation prepared by Reyes Aranda to have the Cobia vessel shipped out of the United States to Mexico. The theft and exportation of the Cobia vessel relate to the overt acts charged in paragraphs 34-38 of the superseding indictment. D.E. 51.

## II.   LEGAL STANDARD

District courts enjoy broad discretion in determining whether to grant a motion *in limine*. *Quantum Capital, LLC v. Banco De Los Trabajadores*, 720 F. App'x 539, 540 (11th Cir. 2017). The goal of a motion *in limine* is to avoid the futile attempt of "unring[ing] the bell" when jurors

have seen or heard inadmissible evidence, even when stricken from the record. *See Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003). Motions *in limine* also serve to streamline trials, by settling evidentiary disputes in advance and by minimizing side-bar conferences and other disruptions at trial. *See United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002) (discussing the value of motions *in limine* to the orderly administration of a trial) (internal citations omitted).

Here, the United States seeks to admit the messages between Gonzalez Vidal and Enrique Lopez pertaining to payment of Hernandez and Reyes Aranda, as well as the emails from Enrique Lopez to Linea Peninsular discussing the Cobia.

## III.   ARGUMENT

The statements between Gonzalez Vidal and Enrique Lopez as well as the emails from Enrique Lopez to Linea Peninsular should be admitted as statements made during and in furtherance of a conspiracy pursuant to Fed. R. Evid. 801(d)(2)(E). The statements are admissible under controlling Eleventh Circuit precedent, and their introduction would not run afoul of the Confrontation Clause.

For a co-conspirator statement to be admissible, "the government must prove by a preponderance of the evidence that: (1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy." *United States v. Harris*, 886 F.3d 1120, 1131 (11th Cir. 2018) (citing *United States v. Hasner*, 340 F.3d 1261, 1274 (11th Cir. 2003)). "[The Eleventh Circuit Court of Appeals] applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988).

To be admitted as a coconspirator statement, "[t]he statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way." *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002). Statements of an uncharged coconspirator are also admissible under Rule 801(d)(2)(E). *United States v. Mascarenas*, 30 F. App'x 784, 790 & n.3 (10th Cir. 2002); *United States v. Davis*, 766 F.2d 1452, 1458 (10th Cir. 1985) (affirming trial court's admission of statements between two uncharged coconspirators).

The government must lay a foundation for the admission of coconspirator hearsay by establishing the existence of a conspiracy including the defendants and declarants through a preponderance of independent evidence. *United States v. Trotter*, 529 F.2d 806, 811-13 (3d Cir. 1976). This standard only requires the trial judge to find "that the existence of the contested fact is more probable than its nonexistence." *Id.* at 812 n.8 (internal citation omitted). Here, messages between Gonzalez Vidal and Hernandez, messages between Gonzalez Vidal and Reyes Aranda, testimony from victims of the alien smuggling scheme, and testimony from cooperating witnesses will prove the first two requirements for admission of the statements.

The remaining question, then, is whether the statements were made during the course and in furtherance of the conspiracy. As part of the manner and means charged in Count 2 of the Superseding Indictment, the government alleges that "Javier Hernandez, Ramon Reyes Aranda, and their co-conspirators would use the stolen vessels in furtherance of a for-profit scheme to smuggle Aliens into the United States." D.E. 51 ¶ 6.

The statements between Gonzalez Vidal and Enrique Lopez pertain directly to the successful functioning of the conspiracy. Hernandez and Reyes Aranda were paid for their participation in the scheme by Gonzalez Vidal and Enrique Lopez, so statements regarding the amount of money they were each owed and how they were to receive the money were made in

furtherance of the conspiracy. *See, e.g.*, *United States v. Turner*, 871 F.2d 1574, 1582 (11th Cir. 1989) (finding that conversations regarding the level of payment that certain individuals were to receive and how the money was to be transported back to the United States were made in furtherance of conspiracy to transport stolen securities).

The statements made by Enrique Lopez to Linea Peninsular were also made in furtherance of the conspiracy. Again, these statements relate specifically to the overt acts alleged in paragraphs 34-36 of the Superseding Indictment. By speaking with Linea Peninsular, providing the fraudulent documentation needed to transport the vessel, and following up with the company to make sure the vessel arrived in Mexico, Enrique Lopez furthered the aims of the conspiracy by exporting the stolen vessel to Mexico, receiving payment for it from a buyer, and giving Reyes Aranda his cut of the money.

Nor would introduction of these statements run afoul of the Confrontation Clause. "[T]he Confrontation Clause prohibits *only* the introduction of testimonial hearsay statements." *United States v. Hano*, 922 F.3d 1272, 1287 (11th Cir. 2019). *Crawford v. Washington* itself specifically noted that most hearsay exceptions addressed statements that "by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." 541 U.S. 36, 56 (2004). Statements furthering a conspiracy are "just as reliable as cross-examined in court testimony"—and their admission advances the Confrontation Clause's goal of promoting accurate testimony—because such statements "are made while the declarant and the accused are partners an illegal enterprise." *Id.* at 73 (Rehnquist, C.J., concurring) (citing *United States v. Inadi*, 475 U.S. 387, 395 (1986)). And, of course, coconspirator statements are *not* hearsay pursuant to Rule 801(d)(2)(E).

In sum, the government will prove that the Gonzalez Vidal and Enrique Lopez participated in the same conspiracy the defendants are charged with and that they made statements to further it. Introducing their statements would prove critical elements of the charged offenses and would not run afoul of the Confrontation Clause.

Pursuant to Local Rule 88.9, the United States has conferred with counsel for defendants Hernandez and Reyes Aranda, who oppose introduction of the statements referenced herein.

## IV.     CONCLUSION

Because Enrique Lopez and Gonzalez Vidal's statements were made in furtherance of the charged conspiracy, the United States respectfully requests that their statements be admitted at trial.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:

Arielle F. Klepach
Assistant United States Attorney
Court ID No. A5502706
99 Northeast 4th Street, 5th Floor
Miami, Florida 33132
T. (305) 961-9272
Arielle.Klepach@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 15, 2023, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

By:     */s/ Arielle F. Klepach.*
Assistant United States Attorney